UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOSE A. JUSINO,<br>        Plaintiff,<br><br>        v.<br><br>COLLEEN GALLAGHER, ROSS<br>WALKER, FURTICK, HENDERSON,<br>ELLISON, KRISTINE BARONE,<br>DORAN, OGANDO, and MALDONADO,<br>        Defendants. | No. 3:21-cv-689 (SRU) |

## INITIAL REVIEW ORDER

Jose Jusino is a sentenced state prisoner currently confined at MacDougall-Walker

Correctional Institution ("MacDougall").[1]  On May 19, 2021, Jusino filed this *pro se* action

pursuant to 42 U.S.C. § 1983.  *See* Compl., Doc. No. 1.  On June 11, 2021, Jusino filed a motion

to amend his complaint, which I granted.  *See* Mot., Doc. No. 5; Order, Doc. No. 6; Am. Compl.,

Doc. No. 7.  In his amended complaint, Jusino alleges that several employees of the Connecticut

Department of Correction ("DOC"), nearly all of whom work at MacDougall, violated his

constitutional rights by denying him adequate access to health care and then threatening to

transfer him to a different DOC facility if he filed a lawsuit regarding the matter.  More

specifically, Jusino sues the following nine DOC employees in both their individual and official

capacities:  DOC Health Program Director Colleen Gallagher,[2] Warden Kristine Barone, Deputy

---

[1]        Pursuant to Fed. R. Evid. 201(b), I take judicial notice of the fact that Jusino is a sentenced state inmate.
*See* Fed. R. Evid. 201(b)(2) (explaining that a "court may judicially notice a fact that is not subject to reasonable
dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be
questioned"); *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012); *Inmate Info.*, CONN. ST. DEP'T OF CORR.,
http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=320660 (last visited Aug. 23, 2021).  Jusino
appears to be serving a life without parole sentence for a capital felony offense.
[2]        Jusino's amended complaint appears to suggest that Colleen Gallagher is the only defendant who may not

Wardens Doran, Ogando, and Maldonado, Health Services Review Coordinator Ross Walker,

Nursing Supervisors Furtick and Henderson, and Nurse F. Ellison.  *See* Am. Compl., Doc. No. 7,

at 2.  I will refer to all nine defendants as "the Defendants."  As a remedy, Jusino seeks damages

and injunctive relief:  Jusino asks me to (1) issue an injunction requiring the Defendants to

provide Jusino with physical therapy and a double mattress pad, (2) award him compensatory

and punitive damages, and (3) grant him reimbursement for his legal fees.  *See id.* at 8.  For the

following reasons, Jusino's amended complaint is **dismissed without prejudice.**

I.      **Standard of Review**

        Pursuant to 28 U.S.C. § 1915A, I must review prisoner civil complaints and dismiss any

portion of those complaints that is frivolous or malicious, that fails to state a claim upon which

relief may be granted, or that seeks monetary relief from a defendant who is immune from such

relief.  Although detailed allegations are not required, the complaint must include sufficient facts

to afford the defendants fair notice of the claims and the grounds upon which they are based and

to demonstrate a plausible right to relief.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56

(2007).  Conclusory allegations are not sufficient.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009).  The plaintiff must plead "enough facts to state a claim to relief that is plausible on its

face."  *Twombly*, 550 U.S. at 570.  Nevertheless, it is well-established that "[*p*]*ro se* complaints

'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'"

*Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of*

*Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02

(2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

---

work at MacDougall.

II.     **Factual Background**

Before the events at issue in this case, Jusino claims that he "suffered injuries to his back and shoulder" as a result of being forced to recreate in handcuffs for 11 months. *See* Am. Compl., Doc. No. 7, at ¶ 12. Jusino has filed a separate lawsuit regarding that alleged constitutional deprivation. *See Jusino v. Quiros, et al.*, No. 3:21-cv-620 (SRU). Jusino's complaint in that case indicates that the 11-month period during which Jusino was forced to recreate in handcuffs occurred from about April 2019 to March 2020 at Northern Correctional Institution. *See* Compl., *Jusino v. Quiros, et al.*, No. 3:21-cv-620 (SRU), Doc. No. 1, at ¶¶ 12–14.

This case is not about the conditions of Jusino's confinement at Northern Correctional Institution. Rather, this case is about the lack of medical treatment that Jusino says he received after he transferred away from Northern. More specifically, on February 8, 2021, Jusino was transferred to MacDougall. *See* Am. Compl., Doc. No. 7, at ¶ 13. On March 8, Jusino submitted a request for medical treatment for his back and shoulder pain to "Sick Call" in the Health Services Request Box located in his housing unit. *See id.* at ¶ 17. In that request, Jusino complained that his shoulder felt like it was shattering and that his arm felt numb whenever he lay on his side. *See id.* He also described a clicking sound when he rotated his shoulder. *See id.*

On March 10, Jusino received a response from Defendant Ellison. The response was: "Please sign up for Prompt Care." *Id.* Jusino was not familiar with "Prompt Care" and notes that "Prompt Care" is not discussed in DOC Directives or other available information sources. *See id.* at ¶ 18. Jusino claims that, at his intake or during his transfer, he was not provided with information that would help him sign up for "Prompt Care." *See id.*

3

Jusino claims that his medical needs were "disregarded for approximately 30 days." *Id.* at ¶ 19.  During that time, Jusino asserts that he "was requesting for information on how to sign up for 'Prompt Care,'" but he was told that "Prompt Care" sign-up sheets were not available.  *Id.*

Jusino claims that Defendant Ellison displayed deliberate indifference to his serious medical needs "by having actual knowledge of an objectively cruel condition thr[ough] a Inmate Request Form and did not respond reasonably to the risk/pain." *Id.* at ¶ 20.  Jusino also claims that Defendant Walker (who was Health Services Review Coordinator) displayed deliberate indifference because "after being informed of the violation through grievances," Defendant Walker "failed to remedy the wrong." *Id.* at ¶ 21.  With respect to the Defendants other than Ellison and Walker, Jusino simply alleges that they are "in position[s] of authority" and "created/allowed the continuance[] of a procedure under which unconstitutional practices occur[r]ed." *Id.* at ¶¶ 22–23.

Finally, in the last paragraph of his complaint, Jusino alleges that he "has been threaten[ed] to be transfer[r]ed to another facility" if he "was to challenge[]/file lawsuit on 'Prompt Care.'" *Id.* at ¶ 24.

## III.   Discussion

Construed liberally, Jusino's complaint asserts that the Defendants violated the Eighth Amendment through their deliberate indifference to his serious medical needs and the First Amendment by retaliating against him.[3]  So construed, Jusino's complaint fails to state any plausible claim for relief.

---

[3]     Although Jusino also mentions his "right to due process of law under the Fourteenth Amendment of the United States Constitution," there are no allegations in Jusino's complaint that even inferentially suggest a potential due process violation.  Am. Compl., Doc. No. 7, at ¶ 1.

A.      Eighth Amendment

The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the

hands of prison officials.  *See Wilson v. Seiter*, 501 U.S. 294, 296–97 (1991); *Estelle v. Gamble*,

429 U.S. 97, 104 (1976).  Although the Constitution does not require "comfortable" prison

conditions, the Eighth Amendment imposes certain duties on prison officials to "ensure that

inmates receive adequate food, clothing, shelter, and medical care" and to "take reasonable

measures to guarantee the safety of the inmates."  *Farmer v. Brennan*, 511 U.S. 825, 832–33

(1994) (cleaned up).  As relevant here, the Eighth Amendment forbids deliberate indifference to

prisoners' serious medical needs.  *See Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d

127, 138 (2d Cir. 2013).  To state an Eighth Amendment claim based on deliberate indifference,

an inmate must demonstrate both an objective and a subjective element.

Objectively, the alleged deprivation must be "sufficiently serious."  *Id.* (cleaned up).  The

Second Circuit has identified several non-exhaustive factors that are "highly relevant" to

determining whether a medical condition satisfies the objective test of the Eighth Amendment

inquiry.  *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998).  Among those are:  The

"existence of an injury that a reasonable doctor or patient would find important and worthy of

comment or treatment; the presence of a medical condition that significantly affects an

individual's daily activities; or the existence of chronic and substantial pain."  *Id.* at 702 (cleaned

up).

When "a prisoner alleges a delay in medical treatment, courts examine both the

seriousness of the prisoner's medical conditions and the harm caused by any unreasonable

delay."  *Lombardo v. Graham*, 807 F. App'x 120, 123 (2d Cir. 2020) (citing *Salahuddin v.*

5

*Goord*, 467 F.3d 263, 280 (2d Cir. 2006)).  "[I]n most cases, the actual medical consequences

that flow from the alleged denial of care will be highly relevant to the question of whether the

denial of treatment subjected the prisoner to a significant risk of serious harm."  *Smith v.*

*Carpenter*, 316 F.3d 178, 187 (2d Cir. 2003); *see also Bilal v. White*, 494 F. App'x 143, 145–46

(2d Cir. 2012) ("Even assuming that Bilal's conditions could produce serious complications if

neglected over sufficient time, there is no evidence that Bilal's conditions worsened over the

hours of delay here.") (cleaned up); *Ferguson v. Cai*, 2012 WL 2865474, at *4 (S.D.N.Y. July

12, 2012) ("Where temporary delays or interruptions in the provision of medical treatment have

been found to satisfy the objective seriousness requirement in [the Second] Circuit, they have

involved either a needlessly prolonged period of delay, or a delay which caused extreme pain or

exacerbated a serious illness.").

Subjectively, the defendants also must have been "reckless in their denial of medical

care."  *Spavone*, 719 F.3d at 138.  Negligence—which might support a claim for medical

malpractice—does not rise to the level of deliberate indifference and is not cognizable under

section 1983.  *See Green v. McLaughlin*, 480 F. App'x 44, 48 (2d Cir. 2012).  "[A]n official's

failure to alleviate a significant risk that he should have perceived but did not" does not

constitute deliberate indifference.  *Farmer*, 511 U.S. at 838.  Instead, the official must have been

actually aware of a substantial risk that the inmate would suffer serious harm as a result of his or

her actions or inactions.  *See Salahuddin,* 467 F.3d at 280.

Finally, "[i]t is well settled in this Circuit that personal involvement of defendants in

alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."

*Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (cleaned up).  That is true for supervisory

6

officials, too. *See Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020) (explaining that to

"hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the

underlying constitutional violation directly against the official without relying on a special test

for supervisory liability").

For several reasons, Jusino has failed to allege a plausible Eighth Amendment claim for

deliberate indifference. First, Jusino has not satisfied the Eighth Amendment's objective

standard. Jusino alleges that he suffered from a 30-day delay in receiving treatment for pain in

his shoulder and back. *See* Am. Compl., Doc. No. 7, at ¶¶ 17, 19. But Jusino does not allege

any adverse effects that he suffered as a result of the delay. More pointedly, Jusino does not

allege that his condition worsened during those 30 days, or even that he continued to suffer

during that time.

Second, even assuming for purposes of initial review that Jusino had satisfied the

objective test, his claim is still implausible because it also fails the subjective test. The defendant

mentioned most in Jusino's amended complaint is Defendant Ellison, the nurse who responded to

Jusino's health services request and told Jusino to sign up for "Prompt Care." But Jusino

provides no indication that Defendant Ellison was aware that Jusino would be unable to sign up

for "Prompt Care." Nor do Jusino's allegations suggest that Defendant Ellison sought to delay or

prevent Jusino from receiving medical treatment for his serious medical needs. At most, Jusino

has alleged that Defendant Ellison displayed negligence, which is not actionable under section

1983. *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) ("Deliberate indifference

describes a mental state more blameworthy than negligence . . . .") (cleaned up).[4]

---

[4]     Jusino also does not plausibly allege that any other defendant was subjectively reckless towards his serious
medical need, assuming he had a serious medical need. As mentioned above, the defendant most involved in this

Even if Jusino *had* met the objective and subjective tests for asserting a plausible Eighth

Amendment claim, I would still dismiss his claim against all the Defendants in their official

capacities and against all the Defendants except Defendants Ellison and Walker in their

individual capacities.

Take official capacity first.  When a party sues a state official in his or her official

capacity, "a federal court's remedial power, consistent with the Eleventh Amendment, is

necessarily limited to prospective injunctive relief . . . and may not include a retroactive award

which requires the payment of funds from the state treasury."  *Edelman v. Jordan*, 415 U.S. 651,

677 (1974); *Ex parte Young*, 209 U.S. 123, 155–56 (1908).  The *Ex parte Young* exception to

Eleventh Amendment immunity "does not permit judgments against state officers declaring that

they violated federal law in the past."  *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy*,

506 U.S. 139, 146 (1993).  Instead, under the exception, "suits for prospective relief against an

individual acting in his official capacity may be brought to end an ongoing violation of a federal

law."  *Vega v. Semple*, 963 F.3d 259, 281 (2d Cir. 2020); *see also In re Dairy Mart Convenience

Stores, Inc.*, 411 F.3d 367, 371–72 (2d Cir. 2005).  Here, Jusino does not allege an ongoing

violation:  He alleges that his complaints were "disregarded for approximately 30 days."  Am.

Compl., Doc. No. 7, at ¶ 19.  Thus, even if Jusino's Eighth Amendment claim made it this far, I

would dismiss it against all the Defendants in their official capacities.

---

alleged constitutional violation was Defendant Ellison, who was not subjectively reckless.  Jusino also mentions that
Defendant Walker failed to take any remedial action after being informed of "the violation through grievances" and
failed to act on information indicating that "unconstitutional acts were occur[r]ing."  Am. Compl., Doc. No. 7, at ¶
21.  Jusino has not included any allegations regarding those grievances.  Because he alleges nothing about what
Defendant Walker reviewed, Jusino has not plausibly alleged that Defendant Walker was aware of—and
disregarded—a significant risk of substantial harm to Jusino.  Even if Defendant Walker reviewed grievances
regarding Jusino's complaints at issue in this case, Jusino provides no indication that Defendant Walker was
anything more than—at most—negligent.  With respect to the other defendants, as I explain above, Jusino has
included no facts whatsoever to tie them to the facts of this case.

With respect to individual capacity, I would dismiss Jusino's Eighth Amendment claim against all the Defendants except Defendants Ellison and Walker.  That is because Jusino has not plausibly alleged the personal involvement of the other defendants.  Jusino's only allegation regarding Defendants Gallagher, Barone, Doran, Ogando, Maldonado, Furtick, and Henderson is that they were "in position[s] of authority" and "created/allowed the continuance[] of a procedure under which unconstitutional practices occur[r]ed." *Id.* at ¶¶ 22–23.  That allegation is not enough to establish those defendants' personal involvement in any constitutional violation, even if there were one. *See Tangreti*, 983 F.3d at 616.

For all those reasons, I dismiss Jusino's Eighth Amendment claim because it fails to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915A(b).

B.       First Amendment Retaliation

Almost in passing, Jusino alleges that he "has been threaten[ed] to be transfer[r]ed to another facility" if he "was to challenge[]/file lawsuit on 'Prompt Care.'"  Am. Compl., Doc. No. 7, at ¶ 24.  That allegation does not plausibly allege a claim for retaliation in violation of the First Amendment, so I dismiss it.

A claim of First Amendment retaliation has three elements:  The plaintiff must show "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015) (quoting *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009)).  Protected speech or activity includes filing a lawsuit, an administrative complaint, or a prison grievance. *See, e.g.*, *Townsend v. Castillo*, 2021 WL 3409326, at *3 (D. Conn. Aug. 4, 2021); *Booth v. Comm'r of Corr.*, 2019 WL 919580, at *5 (D.

Conn. Feb. 25, 2019).  An "adverse action" is "retaliatory conduct that would deter a similarly

situated individual of ordinary firmness from exercising constitutional rights."  *Gill v.*

*Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004) (cleaned up).  And, to properly allege a causal

connection between the two, an inmate must plead facts "suggesting that the protected conduct

was a substantial or motivating factor in the [defendant's] decision to take action against

him."  *Moore v. Peters*, 92 F. Supp. 3d 109, 121 (W.D.N.Y. 2015) (quoting *Burton v. Lynch*, 664

F. Supp. 2d 349, 367 (S.D.N.Y. 2009)) (cleaned up).

Courts in the Second Circuit "approach prisoner retaliation claims 'with skepticism and

particular care, because virtually any adverse action taken against a prisoner by a prison

official—even those otherwise not rising to the level of a constitutional violation—can be

characterized as a constitutionally proscribed retaliatory act.'"  *Dorsey v. Fisher*, 468 F. App'x

25, 27 (2d Cir. 2012) (quoting *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003)).

Consequently, the Second Circuit has required that prisoner retaliation claims "be supported by

specific and detailed factual allegations, not stated in wholly conclusory terms."  *Dolan*, 794

F.3d at 295 (cleaned up).

Jusino's retaliation claim is not plausible.  I take as true that Jusino was engaged in

protected activity (filing a lawsuit).  However, Jusino has not plausibly alleged an adverse action.

To do so, Jusino needed to plausibly allege that he would be subject to adverse consequences as

a result of the purported transfer.  Only then could I draw an inference that the transfer might

deter a similarly situated inmate of ordinary firmness from engaging in protected activity.  *See,*

*e.g.*, *Townsend*, 2021 WL 3409326, at *6 (concluding that plaintiff "easily establishe[d]" adverse

action based on his transfer from an open-compound facility to a Level 4 facility with

"considerably harsher conditions of confinement"); *Lenti v. Connecticut*, 2020 WL 4275600, at

*11 (D. Conn. July 24, 2020) (dismissing retaliation claim because plaintiff had not alleged that

"the transfer was an action that affected him adversely"); *Lebron v. Semple*, 2018 WL 3733972,

at *6 (D. Conn. Aug. 6, 2018) ("Plaintiff's allegations do not state a plausible claim for First

Amendment retaliation, because there are no facts alleged to suggest that the transfer was

adverse to him."); *Rosen v. Pallito*, 2017 WL 6513663, at *7 (D. Vt. Dec. 19, 2017) ("[A] mere

transfer without a corresponding deprivation of privileges does not rise to the level of retaliatory

action."). Jusino does not allege any facts regarding his threatened transfer—not the facility to

which he might have been transferred, nor the conditions he might have been subject to at that

new facility.[5] In fact, DOC records confirm that Jusino has not been transferred, even though he

filed this lawsuit. *See Inmate Info.*, CONN. ST. DEP'T OF CORR.,

http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=320660 (last visited Aug. 23,

2021). In sum, I dismiss Jusino's claim for retaliation in violation of the First Amendment

because he has not plausibly alleged any adverse action. *See* 28 U.S.C. § 1915A(b).

## IV. Conclusion

For the foregoing reasons, Jusino's complaint is **dismissed without prejudice**. I will

---

[5]     On June 25, Jusino filed a document he titled "Judicial Act/Notice." *See* Notice, Doc. No. 8. Jusino filed the same document in two other cases that he has pending before me. *See* Notice, *Jusino v. Rinaldi, et al.*, No. 3:18-cv-2004 (SRU), Doc. No. 101; Notice, *Jusino v. Quiros, et al.*, No. 3:21-cv-620 (SRU), Doc. No. 5. In that notice, Jusino appears to complain that DOC staff is withholding or delaying notices of electronic filing in his cases. Jusino requests that I "order Defendant[s] Angel Quiros, William Mulligan, Nick Rodriguez . . . to ensure that plaintiff receives his electronic filing notices" and "to ensure plaintiff is not retaliated, as plaintiff has been threaten[ed] to be transfer[r]ed to a facility with harsher conditions for plaintiff['s] mental health." *Id.* at 3.
        Quiros, Mulligan, and Rodriguez are not defendants in this case, and the subject matter of Jusino's notice is not related to the subject matter at issue in this case. If Jusino wishes to pursue his claim regarding the allegedly improper withholding of electronic filing notices, he may file a new case regarding that issue. And, even if I considered Jusino's claim of retaliation in connection with this lawsuit, it would not change my analysis. That is because Jusino's allegation is conclusory, and, as described above, prisoner retaliation claims must "be supported by specific and detailed factual allegations, not stated in wholly conclusory terms." *Dolan*, 794 F.3d at 295 (cleaned up).

afford Jusino **one opportunity** to file an amended complaint.  Jusino must file that amended complaint by **September 22, 2021**.  That amended complaint must correct the deficiencies that I have identified in this initial review order.  Failure to file an amended complaint by **September 22, 2021** will result in a dismissal of the complaint with prejudice.  Jusino is advised that any amended complaint will completely replace his prior complaint in this action, and that no portion of any prior complaint shall be incorporated into his amended complaint by reference.

It is so ordered.

Dated at Bridgeport, Connecticut this 23d day of August 2021.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge