## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

JOSE A. JUSINO,
    Plaintiff,

       v.

COLLEEN GALLAGHER, et al.,
    Defendants.

No. 3:21-cv-689 (SRU)

## INITIAL REVIEW ORDER

On May 19, 2021, Jose Jusino, a sentenced inmate, commenced this action *pro se* under 42 U.S.C. § 1983. Compl., Doc. No. 1. Shortly thereafter, Jusino filed a motion to amend his complaint ("First Amended Complaint"), which I granted. *See* Mot., Doc. No. 5; Order, Doc. No. 6.

In the First Amended Complaint, Jusino alleged that several employees of the Connecticut Department of Correction ("DOC"), nearly all of whom work at MacDougall-Walker Correctional Institution ("MacDougall"), violated his constitutional rights by denying him adequate access to health care and then threatening to transfer him to a different DOC facility if he filed a lawsuit regarding the matter. I reviewed the First Amended Complaint under 28 U.S.C. §§ 1915 and 1915A and determined that Jusino had failed to allege plausible Eighth Amendment medical indifference and First Amendment retaliation claims. Initial Review Order, Doc. No. 9, at 9, 11. I dismissed the complaint but afforded Jusino one opportunity to file an amended complaint. *Id.* at 12.

On September 2, 2021, Jusino filed an amended complaint ("Second Amended Complaint"). Prior to initial review of the Second Amended Complaint, Jusino filed a motion to file another amended complaint, which I granted. *See* Order, Doc. No. 15; Mot. to Am., Doc. No.

14. Accordingly, Jusino's Third Amended Complaint is now the operative complaint.[1] *See* Third Am. Compl., Doc. No. 16.

The Third Amended Complaint asserts many of the same allegations previously reviewed but also adds new factual allegations apparently in an effort to address the deficiencies identified in the previous initial review order. This time, Jusino sues the following eight DOC employees: (1) DOC Health Program Director Colleen Gallagher; (2) Health Services Review Coordinator Ross Walker; (3) Facility Administrator Kristine Barone; (4) Gymnasium Program Coordinator, Rudy Alvarez; (5) Nurse Jean Caplan; (6) Nurse Tawanna Furtick; (7) Deputy Warden Damian Doran; and (8) Medical Regional Chief Operating Officer Kristen Shea. *Id.* at ¶¶ 2–8. I will refer to all eight defendants as "the Defendants." All of the Defendants are sued in their individual and official capacities, and Jusino seeks damages and injunctive relief.

For the following reasons, I conclude that Jusino has only stated a plausible Eighth Amendment violation against Defendant Caplan. Accordingly, I dismiss all other claims against Caplan and the other Defendants.

## I.   BACKGROUND

The events giving rise to this lawsuit commenced in March 2021. Prior to that, Jusino, while at another facility, "suffered injuries to his back and shoulder" as a result of being forced to recreate in handcuffs for one hour, five days a week over the course of an eleven-month period. *Id.* at ¶ 11.[2]

---

[1]   Jusino has incorrectly titled this complaint as the "Second Amended Complaint." It is, however, the Third Amended Complaint. In addition, my prior order directing the clerk to docket this complaint as the Second Amended Complaint, doc. no. 15, was incorrect.

[2]   As I explained in my prior initial review order, Jusino has filed a separate lawsuit regarding that alleged constitutional deprivation. *See* Initial Review Order, Doc. No. 9.

Once transferred to McDougall, Jusino placed several written Health Services Requests ("HSRs") for medical treatment in the Health Services Request box. *Id.* at ¶ 12. Jusino's requests for medical care were denied. *Id.* On multiple occasions, he was directed to sign up for "Prompt Care." *Id.* But he was not provided with any direction on how to sign up for Prompt Care, and neither the DOC directives nor the Facility Handbook explained the sign-up process. *Id.* at ¶ 13. Jusino later discovered that Prompt Care is only available once a week, and that inmates can only sign up for Prompt Care during a few hours one day a week. *Id.* at ¶ 14. Because of the lack of information about how to access medical care through Prompt Care, Jusino's injuries were not treated for "an unreasonably protracted period of time," which impaired his ability to sleep at night and take part in daily activities. *Id.* at ¶ 15.

Eventually, Jusino's medical requests were addressed. *Id.* at ¶ 16. Still, Jusino was not permitted to see a medical doctor. *Id.* Instead, he was treated by APRN Caplan, who is not qualified to evaluate, diagnose or treat his injuries. *Id.* Jusino was placed in the facility's "Wellness Program," which was designed to provide him with physical therapy to treat his injuries. *Id.* at ¶ 17. During his participation in the Wellness Program, Jusino experienced increased pain from his injuries. *Id.* at ¶ 18. At that time, Jusino learned that the alleged therapist providing the physical therapy was a member of the gymnasium custodial staff who was not qualified to provide physical therapy. *Id.*

Due to his continued pain, Jusino submitted an HSR to obtain more appropriate treatment for his injuries. *Id.* at ¶ 19. Caplan responded to Jusino's request. *Id.* at ¶ 20. However, Caplan's response addressed Jusino's foot, which was wholly irrelevant to the issue raised in Jusino's HSR. *Id.* Jusino never received any follow-up evaluation to assess his injuries. *Id.*

Jusino submitted another HSR regarding Caplan's lack of qualifications to treat or diagnose his injuries. *Id.* at ¶ 21. Furthermore, the HSR detailed Caplan's refusal to assess his medical needs in retaliation for his filing a complaint to her supervisors about her refusal to provide him with treatment and his request to see a qualified doctor. *Id.* at ¶¶ 21, 35. Caplan denied his HSR and his right to appeal her decision. *Id.* at ¶ 22. Additionally, she declined to provide him with medical care or treatment and refused to prescribe him a medical mattress. *Id.* at ¶¶ 22, 35.

On November 3, 2021, Jusino was seen by a specialized physical therapist at UCONN Health Center Hospital. *Id.* at ¶ 23. The physical therapist recommended a specific course of therapy for Jusino's injuries. *Id.* DOC policy requires that DOC staff meet with an inmate to discuss an "outside hospital facilities" visit upon the inmate's return to the correctional facility. *Id.* at ¶ 24. However, Jusino was not seen regarding the physical therapy prescribed at UCONN Health Center Hospital. *Id.* Caplan, too, failed to meet with Jusino to discuss his physical therapy needs, and she failed to implement the physical therapy recommendations provided by the physical therapy specialist. *Id.* at ¶ 30.

As a result of the lack of medical treatment for his injuries, Jusino suffers from extreme pain, which prevents him from engaging in many ordinary daily activities including: sleeping without interruption; lifting heavy objects; exercising; hand-washing clothing; cutting and shaving his hair; cleaning his cell; pleasuring himself; and writing. *Id.* at ¶ 26. He also has significant elevated cholesterol. *Id.* The physical pain and loss of enjoyment in engaging in daily activities has contributed to a deterioration of his mental health. *Id.*

## II.    STANDARD OF REVIEW

Under 28 U.S.C. § 1915A, I must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

The Supreme Court has set forth a threshold "plausibility" pleading standard for courts to evaluate the adequacy of allegations in federal court complaints. A complaint must allege enough facts—as distinct from legal conclusions—that give rise to plausible grounds for relief. *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Notwithstanding the rule of liberal interpretation of a *pro se* complaint, a *pro se* complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015) ("A *pro se* complaint must allege enough facts to state a claim to relief that is plausible on its face.") (cleaned up).

## III.   DISCUSSION

Construed liberally, Jusino's complaint asserts that the Defendants violated the First, Eighth, and Fourteenth Amendments. *See* Third Am. Compl., Doc. No. 16, at ¶¶ 28–37. I consider each of these claims, beginning with the various individual capacity claims and concluding with the official capacity claims.

### A.   Fourteenth Amendment Due Process

First, Jusino claims that Defendants Gallagher, Furtick, Barone, Doran, and Shea "created and implemented a procedure ('Prompt Care') that violated [Jusino's] due process rights." *Id.* at ¶ 28. According to Jusino, Prompt Care is flawed for several reasons: first, neither the DOC directives nor the facility handbook mention Prompt Care; second, "the procedure" does not ensure that an inmate can submit an HSR on a daily basis; and third, there is no mechanism for an inmate to sign up for health services through Prompt Care. *Id.*

The Fourteenth Amendment provides that a State shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const., amend. XIV, § 1. It protects both a right to "substantive" due process and "procedural" due process. *See County of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998). Jusino does not indicate whether he raises procedural or substantive due process claims. Regardless, both claims fail.

Substantive due process "protects individuals against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense," but "not against government action that is incorrect or ill-advised." *Tavares v. Amato*, 954 F. Supp. 2d 79, 98 (N.D.N.Y. 2013) (quoting *Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir. 1994)). "To establish a violation of substantive due process rights, a plaintiff must demonstrate that the state action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Id.* (quoting *Okin v. Village of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 431 (2d Cir. 2009)).

Procedural due process claims "proceed[] in two steps: [a court] first ask[s] whether there exists a liberty or property interest of which a person has been deprived, and if so … whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011). A plaintiff has a protected liberty interest only if it arises from the Constitution

or from an expectation or interest created by state laws or policies, and the deprivation of that interest caused him to suffer an "atypical and significant hardship." *See Tellier v. Fields,* 280 F.3d 69, 80–81 (2d Cir. 2000).

As alleged, the Prompt Care procedures could be characterized as incorrect or ill-advised, but it does not appear that the procedures were arbitrary, conscience shocking, or constitutionally oppressive. And Jusino never alleges as much. Furthermore, Jusino has alleged no facts to suggest that he had a liberty interest in Prompt Care and its implementation. To be clear, Jusino does have a constitutionally-protected interest in his medical care. *See Youngberg v. Romeo*, 457 U.S. 307, 324 (1982). But that is not the issue Jusino's complaint presents here because he does not claim that he was deprived of medical care due to the Prompt Care procedures. As I understand it, Jusino alleges that the Prompt Care procedures are convoluted, which made it harder for him to schedule health appointments. Although inconvenient, that burden is not an "atypical or significant hardship" that would warrant due process protection. *Tellier,* 280 F.3d at 80–81.

But to the extent that Jusino does allege that the Prompt Care procedures deprived him of medical services, the Eighth Amendment provides "an explicit textual source of constitutional protection." *See County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) ("[W]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.) (cleaned up). Accordingly, Jusino's complaints about Prompt Care are not properly considered under the Fourteenth Amendment Due Process Clause.[3] Accordingly, I dismiss Jusino's claims of Fourteenth Amendment due

---

[3]      The Court recognizes that the Eighth Amendment applies to the States through the Fourteenth Amendment. *See Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002) (cleaned up).

process violations against Defendants Gallagher, Furtick, Barone, Doran, and Shea as not

plausible. *See* 28 U.S.C. § 1915A(b).

B.    <u>Eighth Amendment Deliberate Indifference</u>

Next, Jusino contends that Defendants Caplan, Gallagher, Barone, Doran, Alvarez, Shea,

Doran and Furtick acted with deliberate indifference by failing to provide him with adequate

medical attention for his physical therapy needs. *See* Third Am. Compl., Doc. No. 16, at ¶¶ 29–

37.

The Eighth Amendment prohibits "deliberate indifference to serious medical needs of

prisoners," whether "manifested by prison doctors in their response to the prisoner's needs or by

prison guards in intentionally denying or delaying access to medical care or intentionally

interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976)

(cleaned up). However, "not every lapse in medical care is a constitutional wrong." *Salahuddin*

*v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006). To determine whether a plaintiff has plausibly stated

an Eighth Amendment deliberate indifference claim, courts engage in a two-prong inquiry. *Id.*

279–80.

The first prong is an objective standard and considers whether the medical condition is

"sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*,

501 U.S. 294, 298 (1991)). The Second Circuit has stated that a medical need is serious if it

presents "a condition of urgency that may result in degeneration or extreme pain." *Chance v.*

*Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (cleaned up). Among the relevant factors to

consider are "[t]he existence of an injury that a reasonable doctor or patient would find important

and worthy of comment or treatment; the presence of a medical condition that significantly

affects an individual's daily activities; or the existence of chronic and substantial pain." *Id.*

(quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir. 1992)). When the offending conduct is failure to treat, a court examines "the severity of the prisoner's underlying medical condition;" however, if the allegedly offending conduct is delayed treatment, a court considers "the severity of the temporary deprivation alleged by the prisoner." *Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir. 2003).

The second prong is a subjective standard requiring a plaintiff to demonstrate that the defendant acted with the requisite culpable mental state similar to that of criminal recklessness. *See Salahuddin*, 467 F.3d at 280. Negligence—which might support a claim for medical malpractice—does not rise to the level of deliberate indifference and is not cognizable under section 1983. *See Green v. McLaughlin*, 480 F. App'x 44, 48 (2d Cir. 2012). To know of and disregard an excessive risk to the plaintiff's health or safety, the defendant must be actually "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Darnell v. Pineiro*, 849 F.3d 17, 32 (2d Cir. 2017) (*citing Brennan*, 511 U.S. at 837); *Salahuddin*, 467 F.3d at 281 (noting that the "charged official must be subjectively aware that his conduct creates [substantial] risk [of harm]").

Finally, "[i]t is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (cleaned up). That is true for supervisory officials, too. *See Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020) (explaining that to "hold a state official liable under [section] 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability").

   1.  *Objective Prong*

Construed most liberally in Jusino's favor, his allegations are sufficient to satisfy the objective prong. Jusino has alleged that he suffered from injuries that impaired his ability to engage in daily activities, interfered with his sleep, and caused him pain that increased during his participation in the Wellness Program. *See* Third Am. Compl., Doc. No. 16, at ¶¶ 15, 18, 26. Case law suggests that allegations of "severe pain ... [and] reduced mobility" in the shoulder are sufficient to raise a material issue of fact about a serious medical need. *Sereika v. Patel*, 411 F. Supp. 2d 397, 406 (S.D.N.Y. 2006). Likewise, a condition that hinders an inmate's ability to sleep can constitute a serious condition that satisfies the Eighth Amendment objective element. *See Walker v. Schult*, 717 F.3d 119, 127 (2d Cir. 2013) ("sleep is critical to human existence, and conditions that prevent sleep have been held to violate the Eighth Amendment"). Beyond this, Jusino has also alleged that he has yet to receive treatment.[4] Taken together, I conclude that Jusino has sufficiently alleged the objective element of the Eighth Amendment analysis.

### 2.    *Subjective Prong*

Next, I must consider whether Jusino has alleged that any defendant was aware of, but disregarded, his serious medical needs. To demonstrate deliberate indifference, Jusino points to several actions undertaken by the Defendants, sometimes together, or sometimes individually. I will analyze each in turn.

### a)    Claims Specific to Defendant Caplan

As I construe it, Jusino alleges that Caplan acted with deliberate indifference by failing to take four actions: (1) failing to ensure that the "Wellness Program" met his rehabilitation needs

---

[4]     Although Jusino alleges that he never received any evaluation of those injuries, that claim is seemingly contradicted by the fact that he has affirmatively pled that he received some sort of care at the UCONN hospital. Nevertheless, I decline to reconcile that apparent inconsistency at this stage. His complaint, at the bare minimum, would suggest that he is alleging a delay in treatment. *See Fisk v. Letterman*, 401 F. Supp. 2d 362, 368 (S.D.N.Y. 2005) ("The Court, however, is not obliged to reconcile plaintiff's own pleadings that are contradicted by other matters asserted or relied upon or incorporated by reference by a plaintiff in drafting the complaint.")

for his injuries before placing him in the Program; (2) failing to assess his injuries sustained

through the Wellness Program; (3) failing to discuss his physical therapy needs and failing to

implement the physical therapy recommendations of the UCONN physical therapy specialist;

and (4) refusing to prescribe him a medical mattress. *See* Third Am. Compl., Doc. No. 16, at ¶¶

29–30, 35.

<u>Placement in Wellness Program</u>

The act of placing Jusino in the Wellness Program in, and of itself, is not actionable

under the Eighth Amendment. To begin with, it is not entirely clear from Jusino's complaint that

Caplan was responsible for Jusino's placement in the Wellness Program. But even if she was,

Jusino has not alleged that Caplan was aware that the Program would pose a serious risk of harm

to Jusino. Without that allegation, this argument amounts to nothing more than a disagreement

about a medical decision, which is insufficient to state a claim. *See Gonzalez v. Sarreck*, 2011

WL 5051341 at *18 (S.D.N.Y. Oct. 24, 2011) ("It is well settled that disagreements over

medications, diagnostic techniques, forms of treatment, or the need for specialists or the timing

of their intervention are insufficient under [section] 1983.") (cleaned up). Caplan may have

misapprehended the severity of his injuries, but she credited his complaints and provided care by

placing him in the Wellness Program. Therefore, this claim is implausible, and I dismiss it.  *See*

28 U.S.C. § 1915A(b).

<u>Injuries Sustained During Wellness Program</u>

Once Caplan was put on notice that the Wellness Program was worsening Jusino's

injuries, there was an obligation to respond to that need. Yet, Jusino contends that Caplan

responded to his request for medical care with only an irrelevant reference to his foot. Third Am.

Compl., Doc. No. 16, at ¶ 20. One can imagine a world where Caplan's unrelated response was

11

nothing more than an innocent mistake. Equally plausible, however, is that Caplan intentionally ignored Jusino's medical needs. Given that possibility, Jusino's allegations are sufficient to suggest that Caplan acted with conscious disregard of Jusino's medical needs regarding the injuries he sustained as a Wellness Program participant. *See Henderson v. Hannah*, 2021 WL 1565311, at *4 (D. Conn. Apr. 21, 2021) (for initial pleading purposes, plaintiff sufficiently alleged that Warden acted with conscious disregard by failing to address inmate's concerns about exercise deprivation in her response to his level one grievance). Because this act satisfies the subjective prong, I conclude that this Eighth Amendment claim may proceed against Caplan in her individual capacity.

*Physical Therapy Needs*

Caplan's failure to implement the recommendations by the UCONN physical therapy specialist do not rise to the level of deliberate indifference. Importantly, Jusino does not allege that he requested additional treatment after following up with the specialist. Nor does Jusino allege that Caplan intentionally disregarded the recommendations proscribed by the specialist. Instead, Jusino only posits that he never met with Caplan or any medical staff after his hospital visit, and the failure to do so violated the prison's administrative directives. Accepting that as true does nothing to bolster Jusino's argument because "failure to comply with a state law or administrative directive does not by itself establish a violation of [section] 1983." *Harris v. Taylor*, 441 F. App'x 774, 775 (2d Cir. 2011). Instead, Caplan's failure to meet with Jusino to "assess his physical therapy needs" constitutes, at most, negligence. As such, this claim is dismissed. *See* 28 U.S.C. § 1915A(b).

*Medical Mattress*

12

Finally, Jusino brings an Eighth Amendment claim against Caplan based on her decision not to afford him a medical mattress. Yet, Jusino fails to allege facts sufficient to plausibly infer that Caplan was aware of a substantial risk that would result from that decision. For example, Jusino states that he requested a medical mattress, but fails to allege that Caplan was aware that continuing to use his current mattress posed a substantial risk of seriously exacerbating his medical condition—as opposed to simply being uncomfortable for Jusino. In essence, Jusino disagrees with Caplan's medical decision, and is seeking to use that disagreement as a basis for an Eighth Amendment claim. He cannot. *See Stevenson v. Quiros*, 2022 WL 168799, at *8 (D. Conn. Jan. 19, 2022) (holding that, the plaintiff's claims against medical staff "amount to no more than a disagreement with their decisions not to provide him with an alternative mattress."). Accordingly, I must dismiss this claim against Caplan as not plausible. *See* 28 U.S.C. § 1915A(b).

### b)   Claims Specific to Defendant Walker

As to Defendant Walker, Jusino alleges that Walker denied him medical care through her improper handling of his administrative remedies. Third Am. Compl., Doc. No. 16, at ¶ 32. A nearly identical claim was raised in Jusino's First Amended Complaint, and I dismissed it because Jusino did not "plausibly allege[] that Defendant Walker was aware of—and disregarded—a significant risk of substantial harm to Jusino." Initial Review Order, Doc. No. 9, at 7–8 n.4.

Here, Jusino repeats the same flaw. Yet again, his complaint is devoid of any facts about how or what Walker did specifically, other than "she had no authority on administrative remedies." Third Am. Compl., Doc. No. 16, at ¶ 32. Because Jusino's vague and conclusory allegations about Walker's conduct fail to suggest that Walker acted with a conscious disregard

13

of his serious medical needs, I must dismiss this Eighth Amendment claim as not plausible. *See* 28 U.S.C. § 1915A(b).

To the extent Jusino premises a section 1983 claim on Walker's violation of the grievance procedure, that claim is also not plausible. "[I]nmate grievance programs created by state law are not required by the Constitution, and consequently allegations that prison officials violated those procedures do not give rise to a cognizable [s]ection 1983 claim." *Alvarado v. Westchester Cty.*, 22 F. Supp. 3d 208, 214 (S.D.N.Y. 2014) (cleaned up). Accordingly, I must dismiss Jusino's claims against Walker as not plausible. *See* 28 U.S.C. § 1915A(b).

c)   <u>Creation and Implementation of Wellness Program</u>

Jusino claims that Defendants Gallagher, Barone, Doran, Alvarez and Caplan violated the Eighth Amendment by "creat[ing] and implement[ing]" the Wellness Program. Third Am. Compl., Doc. No. 16, at ¶¶ 31, 34. The Program was inadequate because it allowed an unqualified individual to provide physical therapy to those in need of treatment. *Id.*

Pertinently, Jusino has not alleged that any Defendant created or implemented the Wellness Program with subjective knowledge of a substantial risk of serious harm to Jusino and disregarded that risk. None of the Defendants, excluding Caplan, is even motioned in the body of Jusino's complaint. Such bare allegations are insufficient to establish that these Defendants were personally involved in any alleged constitutional violation in this case. *See Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). Accordingly, I dismiss the Eighth Amendment claim against Gallagher, Barone, Doran, Alvarez and Caplan based on their alleged creation and implementation of the Wellness Program. *See* 28 U.S.C. § 1915A(b).

d)   <u>Creation and Implementation of the Prompt Care Procedure</u>

14

Similarly, Jusino asserts that Defendants Gallagher, Shea, Barone, Doran, and Furtick "acted with deliberate indifference to [his] rights by intentionally creating and implementing the procedure for 'Prompt Care' that restricted [his] access to health care." *Id.* at ¶ 33.

Once again, I conclude that Jusino has not stated facts to suggest that the Defendants were aware that creating and implementing the procedures for Prompt Care would deprive him of his access to medical care. Thus, Jusino has not plausibly alleged the subjective element of his Eighth Amendment claims against Gallagher, Shea, Barone, Doran, and Furtick, and I dismiss the claims as not plausible. *See* 28 U.S.C. § 1915A(b).

C.      First Amendment Retaliation

Rather briefly, Jusino alleges that Caplan failed to provide him with medical care because he filed a complaint about her with her supervisors. *Id.* at ¶¶ 21, 35.

A claim of First Amendment retaliation has three elements: The plaintiff must show "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015) (quoting *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009)). Protected speech or activity includes filing a lawsuit, an administrative complaint, or a prison grievance. *See, e.g.*, *Townsend v. Castillo*, 2021 WL 3409326, at *3 (D. Conn. Aug. 4, 2021); *Booth v. Comm'r of Corr.*, 2019 WL 919580, at *5 (D. Conn. Feb. 25, 2019). An "adverse action" is "retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising constitutional rights." *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004) (cleaned up). To allege a plausible causal connection between the two, an inmate must plead facts "suggesting that the protected conduct was a substantial or motivating factor in the [defendant's] decision to take action against him."

*Moore v. Peters*, 92 F. Supp. 3d 109, 121 (W.D.N.Y. 2015) (quoting *Burton v. Lynch*, 664 F. Supp. 2d 349, 367 (S.D.N.Y. 2009)) (cleaned up).

Courts in the Second Circuit "approach prisoner retaliation claims 'with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act.'" *Dorsey v. Fisher*, 468 F. App'x 25, 27 (2d Cir. 2012) (quoting *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003)). Consequently, the Second Circuit has required that prisoner retaliation claims "be supported by specific and detailed factual allegations, not stated in wholly conclusory terms." *Dolan*, 794 F.3d at 295 (cleaned up).

Jusino has alleged his retaliation claim against Caplan in wholly conclusory terms. As a preliminary matter, I take as true that Jusino engaged in protected activity by filing a complaint. Additionally, I recognize that a failure to provide medical care can constitute adverse action for purposes of First Amendment retaliation. *See Abreu v. Lipka*, 778 F. App'x 28, 33 (2d Cir. 2019) ("[W]ithholding of medication could constitute sufficiently adverse actions that would deter a prisoner of ordinary firmness from exercising his rights.") (cleaned up). But Jusino has not alleged facts about when he filed his complaint or whether Caplan was even aware of his complaint against her so as to raise an inference of a causal connection between his protected activity and Caplan's allegedly retaliatory refusal to provide him with medical attention. *See Thomas v. Jacobs*, 2022 WL 504787, at *15 (S.D.N.Y. Feb. 17, 2022) (noting that circumstantial facts such as temporal proximity or a retaliator's knowledge of the protected activity can suggest a causal connection).

16

Because Jusino has not alleged "specific and detailed facts" to support a plausible causal connection between the alleged adverse failure to provide him with medical attention and his protected activity, I must dismiss Jusino's First Amendment retaliation claim against Caplan as not plausible. *See* 28 U.S.C. § 1915A(b).

D.    <u>Official Capacity Claims</u>

As an initial matter, any damages sought against Defendants (who are state employees) in their official capacities are barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985). However, the Eleventh Amendment does not bar Jusino from seeking prospective injunctive relief for an ongoing constitutional violation from a state official in his or her official capacity. *See Edelman v. Jordan*, 415 U.S. 651, 677 (1974); *see also In re Deposit Ins. Agency*, 482 F. 3d 612, 617 (2d Cir. 2007) ("[A] plaintiff may sue a state official acting in his official capacity – notwithstanding the Eleventh Amendment – for "prospective injunctive relief from violations of federal law.") (cleaned up). That exception, however, "does not permit judgments against state officers declaring that they violated federal law in the past." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 146 (1993). Instead, under the exception, "suits for prospective relief against an individual acting in his official capacity may be brought to end an ongoing violation of a federal law." *Vega v. Semple*, 963 F.3d 259, 281 (2d Cir. 2020).

Jusino seeks injunctive relief ordering that he be provided with adequate medical care, including an examination by a medical professional qualified to assess and diagnose his injuries, medication for his pain, appropriate physical therapy, and a medical mattress. Third Am. Compl, Doc. No. 16, at 11. I have determined that Jusino has alleged one plausible Eighth Amendment claim based on Caplan's failure to provide him medical treatment for his injuries sustained

17

during his participation in the Wellness Program. Because he alleges that he is still in extreme

pain, I construe his complaint most generously to state an ongoing Eighth Amendment deliberate

indifference claim based on lack of medical attention for his injuries. Accordingly, I will permit

Jusino to proceed on his official capacity claim for medical treatment including physical therapy

for his injuries against Caplan in her official capacity. Jusino's remaining claims for injunctive

relief must be denied because those claims fail to state a plausible ongoing constitutional

violation.

## ORDERS

The Court enters the following orders:

(1) Consistent with the foregoing discussion, Jusino may proceed on his claim against

Defendant Jean Caplan in her individual and official capacities for an Eighth Amendment

violation based on deliberate indifference to his medical treatment needs for his injuries

sustained during his participation in the Wellness Program. All other claims are DISMISSED.

Thus, Defendants Gallagher, Shea, Walker, Furtick, Barone, Doran, and Alvarez are

DISMISSED from this action.

(2) Because Jusino has paid the filing fee in this case, and he has not been granted *in

forma pauperis* status, he is responsible for serving the Third Amended Complaint on Jean

Caplan in her individual and official capacities within 90 days of the date of this Order pursuant

to Rule 4, Fed. R. Civ. P.  If Jusino has questions about service of the Third Amended

Complaint, he may contact the Inmate Legal Aid Program ("ILAP").  Failure to effect service

within the time specified may result in the dismissal of this action as to a defendant who has not

been served.

The Clerk is directed to send Jusino instructions for service of the complaint on Defendant Caplan in her **individual and official** capacities, together with one copy of the Third Amended Complaint, one copy of this order, one blank Notice of Lawsuit forms, one blank Waiver of Service of Summons forms, and one summons form completed and issued by the Clerk for APRN Caplan in her **official** capacity using the address of the Office of the Attorney General, 165 Capitol Avenue, Hartford, Connecticut 06160.

(3) Jusino shall effect service of the Third Amended Complaint on Jean Caplan in her individual capacity by mailing a Notice of Lawsuit form, a Waiver of Service of Summons form, a copy of the Third Amended Complaint, and a copy of this order to Jean Caplan. **Jusino shall file a notice with the Clerk indicating the date on which he mailed the Notice of Lawsuit and Waiver of Services of Summons forms to Jean Caplan in her individual capacity. Jusino shall also file with the Clerk the signed Waiver of Service of Summons form that he receives from Caplan in her individual capacity.**

(4) Jusino shall also effect service of the Third Amended Complaint on Jean Caplan in her **official** capacity by serving a copy of the summons, Third Amended Complaint, and this order on Jean Caplan using the address of the Office of the Attorney General, 165 Capitol Avenue, Hartford, Connecticut 06160. **He shall also file a return of service documenting when Jean Caplan was served in her official capacity with a copy of the Third Amended Complaint.**

(5) The clerk shall send a courtesy copy of the Third Amended Complaint and this Order to the DOC Office of Legal Affairs and the Office of the Attorney General.

(6) Defendant Caplan shall file a response to the Third Amended Complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to her.  If Defendant Caplan chooses to file an answer, she shall admit or deny the allegations and respond to the cognizable claims recited above. She may also include any and all additional defenses permitted by the Federal Rules.

(7) Discovery, according to Federal Rules of Civil Procedure 26-37, shall be completed within **six months (180 days)** from the date of this Order. Discovery requests need not be filed with the Court.

 (8) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the Court. The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(9) All motions for summary judgment shall be filed within **seven months (210 days)** from the date of this Order.

(10) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed.  If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(11)  If Jusino changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the Court.  Failure to do so can result in the dismissal of the case.  Jusino must give notice of a new address even if he is incarcerated.  He should write "PLEASE NOTE MY NEW ADDRESS" on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If Jusino has more than

one pending case, he should indicate all of the case numbers in the notification of change of address.  He should also notify Defendant or defense counsel of his new address.

(12) Jusino shall utilize the Prisoner Efiling Program when filing documents with the court.  Jusino is advised that the Program may be used only to file documents with the court. Local court rules provide that discovery requests are not filed with the court.  D. Conn. L. Civ. R. 5(f).  Therefore, discovery requests must be served on defendant's counsel by regular mail.

It is so ordered.

Dated at Bridgeport, Connecticut this 9th day of June 2022.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge