UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOSE A. JUSINO,<br>  Plaintiff,<br><br>  v.<br><br>COLLEEN GALLAGHER, et al.,<br>  Defendants. | No. 3:21-cv-00689 (SRU) |

## RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT AND MOTION TO DISMISS JEAN CAPLAN'S AFFIDAVIT

  The plaintiff, Jose A. Jusino ("Jusino"), is a sentenced inmate in the custody of the Connecticut Department of Correction. In May 2021, Jusino, proceeding *pro se*, commenced this civil rights action under 42 U.S.C. § 1983. Compl., Doc. No. 1. At the time, Jusino was confined at MacDougall-Walker Correctional Institution ("MacDougall") but has since transferred to Cheshire Correctional Institution. *Id.* While at MacDougall, Jusino alleges that Nurse Jean Caplan ("Caplan")—the only remaining defendant in this case— was deliberately indifferent to his medical needs, in violation of his Eighth Amendment rights. Third Am. Compl., Doc. No. 16, at ¶ 1.[1]

---

[1]   Shortly after he filed this action, Jusino filed a motion to amend his complaint ("First Amended Complaint"), which I granted. *See* Pl. Mot. to Amend, Doc. No. 5; Order, Doc. No. 6. In the First Amended Complaint, Jusino alleged that several employees of the Connecticut Department of Correction ("DOC"), nearly all of whom work at MacDougall-Walker Correctional Institution ("MacDougall"), violated his constitutional rights by denying him adequate access to health care and threatening to transfer him to a different DOC facility if he filed a lawsuit regarding the matter. *See* First Amended Compl., Doc. No. 7. I reviewed the First Amended Complaint under 28 U.S.C. §§ 1915 and 1915A and determined that Jusino had failed to allege plausible Eighth Amendment medical indifference and First Amendment retaliation claims. Initial Review Order, Doc. No. 9, at 9, 11. I dismissed the complaint but afforded Jusino one opportunity to file an amended complaint. *Id.* at 12. On September 2, 2021, Jusino filed an amended complaint ("Second Amended Complaint"). *See* Second Am. Compl., Doc. No. 10. Prior to initial review of the Second Amended Complaint, Jusino filed a motion to file another amended complaint, which I granted. *See* Pl. Mot. to Am., Doc. No. 14; Order, Doc. No. 15. Jusino's Third Amended Complaint asserted constitutional claims against eight DOC employees in their official and individual capacities. Third Am. Compl., Doc. No. 16. On initial review of Jusino's Third Amended Complaint (the operative complaint), I concluded that Jusino had stated only a plausible Eighth Amendment violation against Caplan. *See* Initial Review Order, Doc. No. 17.

On December 16, 2022, Jusino filed a motion for summary judgment on this Eighth Amendment claim. Pl. Mot. for Summ. Judg., Doc. No. 42. On February 6, 2023, Caplan filed a cross motion for summary judgment. Def. Mot. for Summ. Judg., Doc. No. 53. Shortly thereafter, Jusino filed a motion to dismiss Caplan's declaration in support of her cross motion for summary judgment. Def. Mot. to Dismiss, Doc. No. 58.

For the reasons that follow, Caplan's motion for summary judgment, doc. no. 53, is **granted**, and Jusino's motion to dismiss, doc. no. 58, and motion for summary judgment, doc. no. 42, are **denied**.

I.      BACKGROUND

After review of the statements of facts and the underlying record, I conclude that the following facts are not in dispute.[2]

At all times relevant to this action, Caplan was licensed by the State of Connecticut as an advanced practice registered nurse ("APRN"). Def. Rule 56(a)1 Stmt., Doc. No. 53-2, at ¶ 1. Under Connecticut General Statutes § 20-87a, an APRN is qualified to "perform[] acts of diagnosis and treatment of alterations in health status" and to "prescribe, dispense and administer medical therapeutics and corrective measures and dispense drugs in the form of professional samples . . . in all settings." *Id.* at ¶ 2. Caplan is experienced and trained in internal medicine and therefore qualified to diagnose, assess and treat a very broad range of health concerns and diseases, including shoulder pain. *Id.* at ¶ 3.

A.      Clinical Record

On April 9, 2021, Caplan was assigned to be Jusino's primary care provider. *Id.* at ¶ 4; Caplan Decl., Doc. No. 57, at ¶¶ 4, 7; Def. Ex. A, Doc. No. 51, at 148–52 (under seal). On that

---

[2]      I cite only to the relevant paragraph in the Local Rule 56(a)1 statement where a party's cited evidence establishes an undisputed fact.

date, Caplan examined Jusino. Def. Rule 56(a)1 Stmt., Doc. No. 53-2, at ¶ 5. During the physical examination, Jusino complained of ongoing left shoulder pain, his "left foot clicking" and a new onset "bulge" in his umbilicus. *Id.*; Caplan Decl., Doc. No. 57, at ¶ 8; Def. Ex. A, Doc. No. 51, at 149–52. The medical record reflects that Jusino described his shoulder pain as an intermittent "dull ache" with a moderate pain level of 4, and expressed concerns about ongoing pain with no numbness or tingling. Def. Ex. A, Doc. No. 51, at 149–150.

Following her examination, Caplan concluded that Jusino's left shoulder had full range of motion and his pain was not reproduceable. Def. Ex. A, Doc. No. 51, at 150–52; Caplan Decl., Doc No. 57, at ¶ 15. Based on that assessment, Caplan believed an appropriate exercise regimen could alleviate Jusino's symptoms and instructed him on exercises and stretches to perform daily. Def. Rule 56(a)1 Stmt., Doc. No. 53-2, at ¶ 21; Def. Ex. A, Doc. No. 51, at 152. Caplan avers that she advised him not to engage in overexertion of his shoulder and, in the event his pain did not improve, she would consider additional diagnostic tests and referrals to specialists. Caplan Decl., Doc. No. 57, at ¶ 16.

Two weeks later, on April 20, 2021, Caplan met with Jusino again. Def. Rule 56(a)1 Stmt., Doc. No. 53-2, at ¶ 23. During that appointment, Caplan demonstrated exercises for him to perform for his left shoulder, wrote out an exercise plan, and gave specific instructions on how frequently to perform these exercises. *Id.*; Caplan Decl., Doc. No. 57, at ¶ 17. The medical note indicates that Jusino demonstrated his verbal understanding of the treatment plan for his shoulder. Def. Ex. A, Doc. No. 51, at 133.

About a month later, on June 1, 2021, Jusino had another appointment with Caplan. Def. Rule 56(a)1 Stmt., Doc. No. 53-2, at ¶¶ 12, 14. At that time, Caplan examined Jusino's left shoulder due to his complaint of chronic pain. Def. Ex. A, Doc. No. 51, at 114–17. Caplan noted

Jusino had "proximal weakness" in his left extremity based on his report of having difficulty with raising his left arm during the exam. Def. Rule 56(a)1 Stmt., Doc. No. 53-2, at ¶ 14; Caplan Decl., Doc. No. 57, at ¶ 19. She avers that she could not ascertain the cause of his weakness but ruled out muscle loss (because his left shoulder was symmetrical to his right shoulder and was not sagging or deformed) and a neurological reason for the weakness (because of the presence of reflexes in his biceps and brachioradialis nerves). Def. Rule 56(a)1 Stmt., Doc. No. 53-2, at ¶ 15; Caplan Decl., Doc. No. 57, at ¶ 19. Caplan ordered an x-ray of Jusino's shoulder to investigate the source of his pain and reported weakness. Def. Rule 56(a)1 Stmt., Doc. No. 53-2, at ¶ 16; Caplan Decl., Doc. No. 57, at ¶ 20. That same day, Jusino had x-rays taken of his left shoulder. Def. Rule 56(a)1 Stmt., Doc. No. 53-2, at ¶ 17; Def. Ex. A, Doc. No. 51, at 95–96.

In addition, Caplan entered an order for Jusino to be seen for a consultation with a physical therapist at the University of Connecticut ("UConn") Health Center. Def. Rule 56(a)1 Stmt., Doc. No. 53-2, at ¶ 24. Caplan believed that Jusino's shoulder should be managed conservatively and recommended that he manage his pain with Ibuprofen, an anti-inflammatory drug available at the prison commissary. *Id.* at ¶¶ 24–25; Caplan Decl., Doc. No. 57, at ¶¶ 21–22, 24. Jusino expressed he did not want to take pain medication, to which Caplan then instructed him to avoid overexertion and continue his daily exercise and stretching plan until he saw a physical therapist. Caplan Decl., Doc. No. 57, at ¶ 25. Scheduling for physical therapy is at the discretion of the UConn Health Center. Def. Rule 56(a)1 Stmt., Doc. No. 53-2, at ¶ 29. As such, Caplan had no control over the scheduling of Jusino's physical therapy appointment. *Id.*

On June 15, 2021, Caplan met with Jusino to review the x-ray results. *Id.* at ¶ 28. Per the radiologist report, dated June 11, 2021, the radiologist interpreted four x-ray views of Jusino's left shoulder as "normal," with "no evidence of a fracture or dislocation," "no calcifications seen

in the rotator cuff," and "[n]o significant bony, joint space or soft tissue abnormalities" identified. Def. Ex. A, Doc. No. 51, at 96.[3] Because Jusino's x-rays for his left shoulder returned "normal" results, Caplan determined that no further diagnostic studies were warranted as of June 15, 2021. Def. Rule 56(a)1 Stmt., Doc. No. 53-2, at ¶ 20. Caplan advised Jusino to continue performing the self-care measures she had previously instructed him on until he could be seen by a physical therapist. *Id.* at ¶ 28; Caplan Decl., Doc. No. 57, at ¶ 27.

At or around that time, Jusino inquired about the "Wellness Program." Caplan Decl., Doc. No. 57, at ¶ 28. The Wellness Program is a program for inmates to perform medically ordered exercise regimens overseen by non-medically trained individuals. *Id.* Caplan supported Jusino's decision to attend that program because she had provided Jusino with an exercise regimen. *Id.* Following the June 15 appointment, Caplan was not aware of a request from Jusino to see her for medical treatment. Def. Rule 56(a)1 Stmt., Doc. No. 53-2, at ¶ 31.

On July 6, 2021, Caplan met Jusino to discuss recent lab tests that came back with abnormal results not related to his shoulder condition. *Id.* at ¶ 33; Def. Ex. A, Doc. No. 51, at 53–55. The medical note reflects that Jusino was not in acute distress. Def. Ex. A, Doc. No. 51, at 53–55.

A few weeks later, on July 16, 2021, Jusino was seen by the UConn orthopedics department on referral from Caplan for an injury to his left foot, at which time he denied having any "other musculoskeletal pain, numbness/tingling, or weakness." Def. Rule 56(a)1 Stmt., Doc. No. 53-2, at ¶ 34.

    B.    <u>Administrative Remedies</u>

---

[3]     At the bottom of the report, the radiologist refers to the right shoulder, but the medical record contains x-ray images of only Jusino's left shoulder. *See* Caplan Decl., Doc. No. 57, at ¶ 26 n.1.

On July 31, 2021, Jusino submitted an administrative remedy inmate request form ("CN 9601"). *Id.* at ¶¶ 35–36; Def. Ex. C, Doc. No. 53-6. Jusino's inmate request was directed to a "medical supervisor" and complained about being subjected to physical therapy by non-trained individuals in the Wellness Program. Def. Ex. C, Doc. No. 53-6. Jusino's inmate request form also requested an MRI, a medical mattress, and physical therapy for his shoulder injury that had "gotten wors[e]" after his Wellness Program participation. *Id.*

On or about August 4, 2021, Jusino's inmate request was forwarded to Caplan. Def. Rule 56(a)1 Stmt., Doc. No. 53-2, at ¶ 35; Def. Ex. C, Doc. No. 53-6. Caplan has no knowledge of any incident report documenting that Jusino sustained an acute injury during his participation in the Wellness Program. Def. Rule 56(a)1 Stmt., Doc. No. 53-2, at ¶ 37. As such, Caplan perceived Jusino's inmate request as describing a flare-up from his activities, which did not necessitate the need for re-evaluation. *Id.* at ¶ 37. Caplan responded to Jusino's inmate request. *Id.* at ¶ 39. In Caplan's response, dated August 4, 2021, she stated that: (1) a request for him to be seen by a physical therapist had been submitted; (2) she disagreed that an MRI was warranted but advised that she was open to reconsidering that opinion if his shoulder did not improve following the treatment recommended by the physical therapist; and (3) another department is responsible for ordering mattresses. *Id.* at ¶ 39; Def. Ex. C, Doc. No. 53-6. Caplan's response also included the outcome of the July 16 orthopedics appointment. Def. Ex. C, Doc. No. 53-6. She included that information because it was her first communication with him following his July 16 visit. Caplan Decl., Doc. No. 57, at ¶ 40.

On September 15, 2021, Jusino submitted a Level 1 medical grievance, complaining about Caplan's medical care and qualifications. Def. Ex. D, Doc. No. 53-7. Caplan was forwarded Jusino's grievance about a month later. Caplan Decl., Doc. No. 57, at ¶ 38. In her

6

response, dated October 14, 2021, she informed Jusino that he had physical therapy scheduled, during which, he would be advised about proper exercises. Def. Ex. D, Doc. No. 53-7. She added that she hoped those "exercises will relieve [his] discomfort." *Id.* Finally, she stated that "[t]his is a process with outpatient services. The consultation will be read by myself and follow up will occur." *Id.*

      C.      <u>Physical Therapy Consultation and Subsequent Treatment</u>

On November 3, 2021, a physical therapist at the UConn Health Center met with Jusino and, like Caplan, rendered a general diagnosis of "pain in shoulder." Def. Rule 56(a)1 Stmt., Doc. No. 53-2, at ¶ 44. The physical therapist documented Jusino's report of "chronic pain" since 2019, but the report did not reference any acute injury sustained by Jusino's participation in the Wellness Program. *Id.* at ¶ 45; Def. Ex. A, Doc. No. 51, at 7–11. Rather, the physical therapist observed that Jusino remained "[i]ndependent with [activities of daily life]," that his "current activity limitations [were] not significantly different than [his] prior level of function," and that he "should achieve near optimal functional improvement with skilled [physical therapy] intervention." *Id.* at 8–10.

On November 25, 2021, Jusino submitted another Level 1 medical grievance; this time requesting a follow-up appointment to discuss his physical therapy consultation. Pl. Ex. E, Doc. No. 42.

On December 17, 2021, Caplan saw Jusino for a follow-up and reviewed the exercise plan set by the physical therapist. Def. Rule 56(a)1 Stmt., Doc. No. 53-2, at ¶ 48; Def. Ex. B, Doc. No. 52, at 18. After that appointment, Caplan neither received any "MD Sick Call" requests from Jusino for further evaluation of his shoulder, nor any forwarded administrative remedies or

health care grievances concerning her evaluation and treatment of his shoulder. Def. Rule 56(a)1 Stmt., Doc. No. 53-2, at ¶¶ 49–50.

Months later, on March 24, 2022, Caplan saw Jusino about his post-COVID-19 fatigue and other medical issues not related to his shoulder pain. Def. Rule 56(a)1 Stmt., Doc. No. 53-2, at ¶ 51.

In May 2022, Jusino filed a request about his cholesterol levels. *Id.* at ¶ 52. After Caplan determined that Jusino's cholesterol levels had improved while he was on fish oil, she wrote to him on July 15, 2022, advising that he should continue taking the fish oil as directed. *Id.* at ¶ 53.

Jusino was transferred to Cheshire Correctional Institution on September 12, 2022. *Id.* at ¶ 54. Since his transfer, Caplan has not had further contact with Jusino. *Id.*

D.   Caplan's Declaration

In her declaration, Caplan avers that medical providers can detect significant shoulder pathology with a physical examination, including rotator cuff tears, an impinged nerve, instability or muscle atrophy. Caplan Decl., Doc. No. 57, at ¶¶ 10–12. Further, Caplan adds that pinpointing an exact source of pain in the shoulder can be difficult due to the number of tendons, muscles and ligaments comprising a shoulder joint. *Id.* If there is no clear pathology or obvious source for a patient's reported pain after conducting the examination, medical practitioners commonly diagnose the pain as "nonspecific shoulder pain," or generally as "shoulder pain." *Id.* at ¶ 10. Should a physical examination not yield any pathology or source for the reported shoulder pain, the medical provider needs an x-ray to assist with identification of the cause of shoulder pain. *Id.* at ¶ 12. If the patient's medical history, physical examination and x-ray study fail to identify the patient's cause of pain, a medical provider's standard practice is to wait and

see if the pain resolves on its own or, alternatively, to take noninvasive measures prior to ordering additional diagnostics and specialist referrals. *Id.* at ¶¶ 12–14.

## II.     MOTION TO DISMISS

Before proceeding to the merits of the motions for summary judgment, I address at the outset Jusino's motion to dismiss. In support of her motion for summary judgment, Caplan submitted a declaration. *See* Def. Affidavit, Doc. No. 57. Jusino's motion to dismiss followed. *See* Pl. Mot. to Dismiss, Doc. No. 58. Therein, he requests dismissal of Caplan's declaration. *Id.* Construed liberally, Jusino's motion is essentially a motion to strike evidence submitted in connection with a motion for summary judgment.

Federal Rule of Civil Procedure 12(f) allows a court to strike an "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" from a party's pleading. But a declaration is not considered a pleading, and Rule 12(f) allows a court to strike only pleadings. *See McKinney v. Dzurenda*, 2013 WL 1296468, at *1 (D. Conn. Mar. 27, 2013). Even if Caplan's declaration could be construed as a pleading, Jusino merely refers to facts that he claims are inaccurate or false rather than redundant, immaterial, impertinent or scandalous matters within the declaration.

Putting aside that "[t]he Federal Rules of Civil Procedure do not explicitly allow motions to strike in the context of summary judgment," *Ferraresso v. Town of Granby*, 646 F. Supp. 2d 296, 301 (D. Conn. 2009), Federal of Civil Procedure Rule 56(c) and Local Rule 56(a)2 provide an adequate means for Jusino to object to Caplan's declaration and show the alleged falsity of her averments. Accordingly, Jusino's motion to dismiss, doc. no. 58, is **denied.**

## III.    MOTIONS FOR SUMMARY JUDGMENT

### A.     Standard of Review

9

Summary judgment is appropriate when the record demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) (plaintiff must present affirmative evidence to defeat a properly supported motion for summary judgment).

When ruling on a summary judgment motion, the court must construe the facts of record in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970); *see also Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir. 1992) (court is required to "resolve all ambiguities and draw all inferences in favor of the nonmoving party"). When a motion for summary judgment is properly supported by documentary and testimonial evidence, however, the nonmoving party may not rest upon the mere allegations or denials of the pleadings but must present sufficient probative evidence to establish a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

"Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991); *see also Suburban Propane v. Proctor Gas, Inc.*, 953 F.2d 780, 788 (2d Cir. 1992). If the nonmoving party submits evidence that is "merely colorable," or is not "significantly probative," summary judgment may be granted. *Anderson*, 477 U.S. at 249–50.

> The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude

10

the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

*Id.* at 247–48.

To present a "genuine" issue of material fact, there must be contradictory evidence "such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248. If the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate. *Celotex*, 477 U.S. at 322. In such a situation, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23; *accord Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (movant's burden satisfied if he can point to an absence of evidence to support an essential element of nonmoving party's claim). In short, if there is no genuine issue of material fact, summary judgment may enter. *Celotex*, 477 U.S. at 323.

In the context of cross-motions for summary judgment, the same standard is applied. *See Scholastic, Inc. v. Harris*, 259 F.3d 73, 81 (2d Cir. 2001). However, in deciding each motion, the court must construe the evidence in the light most favorable to the non-moving party. *Id.*

B.  Analysis

Jusino's principle claim is that Caplan violated his Eighth Amendment rights as a matter of law by refusing to evaluate or treat his shoulder injury that he sustained during his participation in the Wellness Program. Pl. Mot. for Summ. Judg., Doc. No. 42, at 5.[4] Caplan

---

[4] In his motion for summary judgment, Jusino asserts that Caplan was not qualified to evaluate or treat his shoulder pain. But he provides no support for this conclusory assertion. To the contrary, the evidentiary record substantiates that Caplan *is* qualified under Connecticut General statutes § 20-87a to practice "acts of diagnosis and treatment of alteration in health status," and that she is experienced and trained in internal medicine.

11

takes a different view. Per Caplan, Jusino cannot establish the requisite elements of his Eighth Amendment claim, or in the alternative, qualified immunity shields her from any liability. *See* Def. Mem. in Supp. of Mot. for Summ. Judg., Doc. No. 53-1.

The Eighth Amendment's ban on cruel and unusual punishment has been interpreted to prohibit deliberate indifference to an incarcerated individual's serious medical needs by medical providers and prison officials. *See Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). Deliberate indifference to serious medical needs occurs when an official knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Harrison v. Barkley*, 219 F.3d 132, 137–38 (2d Cir. 1998) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). To sustain a claim for deliberate indifference to serious medical needs, Jusino must prove that his medical need was serious and that the defendant acted with a sufficiently culpable state of mind. *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (citing *Estelle*, 492 U.S. at 105).

Objectively, the alleged deprivation must be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The condition must be "one that may produce death, degeneration, or extreme pain." *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (cleaned up). Under Second Circuit law, the objective serious medical need inquiry is fact-specific and "must be tailored to the specific circumstances of each case." *Smith*, 316 F.3d at 185. "[I]f the unreasonable medical care is a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's medical condition is sufficiently serious." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006) (citing *Smith*, 316 F.3d at 185–86). Factors relevant to the seriousness of a medical condition include whether "a reasonable doctor or patient would find [it] important and worthy of comment," whether the condition

12

"significantly affects an individual's daily activities," and whether it causes "chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (cleaned up). Moreover, "the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Helling v. McKinney*, 509 U.S. 25, 36 (1993).

Subjectively, Caplan must have been actually aware of a substantial risk that Jusino would suffer serious harm as a result of her conduct. *See Salahuddin*, 467 F.3d at 280–81. "[M]ere medical malpractice is not tantamount to deliberate indifference," unless "the malpractice involves culpable recklessness, *i.e.,* a conscious disregard of a substantial risk of serious harm." *Chance*, 143 F.3d at 703. Similarly, a difference of opinion between an inmate and medical provider regarding the appropriate medical treatment does not rise to the level of deliberate indifference. "So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Id.*

1. *Objective Prong*

Here, Jusino claims that Caplan refused to treat his severe shoulder pain after he filed an inmate request for treatment on July 31, 2021. Pl. Decl., Doc. No. 42, at ¶ 9. He avers that he experienced severe pain that interfered with his ability to engage in normal daily activities. *Id.* at ¶ 7.

Caplan maintains that Jusino challenges the adequacy of the medical care she provided for his shoulder rather than a denial of treatment. Per Caplan, therefore, Jusino must satisfy a narrower inquiry. Def. Mem in Supp. of Mot. for Summ. Judg., Doc. No. 53-1, at 10. Where a prisoner receives some care, but allegedly inadequate care, the court's consideration of the seriousness of the plaintiff's condition must examine how the offending conduct is inadequate

and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Sanders v. Laplante*, 2019 WL 5538118, at *3 (D. Conn. Oct. 25, 2019) (cleaned up).

Regardless of how Jusino's claim is characterized, Jusino complains of continuing, debilitating shoulder pain, which can constitute a serious medical need. *See Guarneri v. Bates*, 2008 WL 686809, at *5 (N.D.N.Y. Mar. 10, 2008) (shoulder injury constitutes a serious medical need where plaintiff contends that alleged rotator cuff tear left him in severe pain and unable to move his arm).

That said, Jusino's averments—and the medical record documenting his diagnosis of shoulder pain—do not establish that he suffered from an objectively serious medical condition as a matter of law. I discern genuine issues of fact concerning the seriousness of Jusino's continuing shoulder pain resulting from Caplan's treatment plan and her failure to provide him with additional treatment in response to his inmate request in July 2021. *See Sereika v. Patel*, 411 F. Supp. 2d 397, 406 (S.D.N.Y. 2006) (allegations of "severe pain … [and] reduced mobility" in the shoulder are sufficient to raise a material issue of facts as to a serious medical need).

Accordingly, I must **deny** Jusino's motion for summary judgment, doc. no. 42, because there are triable issues of fact with respect to whether he suffered a serious medical need.

    2.    *Subjective Prong*

Even if Jusino suffered a serious medical need, he has not offered evidence sufficient to prove that Caplan was deliberately indifferent.

Jusino claims that Caplan ignored the substance of his July 2021 inmate request by merely referring only to his foot injury. Third Am. Compl., Doc. No. 16, at ¶ 20. But the record demonstrates the opposite. *See* Def. Ex. C, Doc. No. 53-6. Caplan's response addressed each of Jusino's concerns. First, she informed him that his request to be seen by a physical therapist had

been submitted. *Id.* Second, she stated an MRI was not warranted at that time, but advised him that she was open to reconsidering her opinion if his shoulder did not improve following the treatment recommended by the physical therapist. *Id.* Finally, she informed him that another department is responsible for ordering mattresses. *Id.*

Caplan understood that Jusino's inmate request did not relate to a new injury. Caplan Decl., Doc. No. 57, at ¶¶ 33–35. In her experience, patients with chronic pain typically experience pain that worsens depending on the patient's activities. *Id.* As such, she concluded that another physical examination was not medically necessary, and there was no need to change his existing treatment plan until his physical therapy appointment. *Id.* Moreover, due to his "normal" x-ray results, Caplan did not think an MRI was `warranted at the time. *Id.* at ¶ 37. Caplan avers that she responded to Jusino's shoulder complaint according to the standard practices for evaluation, diagnosis and treatment of other medical providers. *Id.* at ¶¶ 12–16.

At best, Jusino's complaint boils down to his disagreement with Caplan's medical judgment regarding his appropriate treatment plan. But "[a] prisoner does not have the right to choose his medical treatment as long as he receives adequate treatment." *Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011) (citing *Estelle*, 429 U.S. at 106–07); *see also Hathaway*, 37 F.3d at 70 ("We do not sit as a medical board of review. Where the dispute concerns not the absence of help but the choice of a certain course of treatment, or evidenced mere disagreement with considered medical judgment, we will not second guess the doctors."). A medical provider may act with deliberate indifference by consciously providing an inmate with "an easier and less efficacious" treatment plan, particularly if the provider does so because of ulterior motives, such as improper monetary incentive. *Chance*, 143 F.3d at 703–04 (cleaned up). Whether a course of

15

treatment was the product of sound medical judgment, negligence, or deliberate indifference depends on the facts of the case. *Id.* at 703.

Here, Jusino adduces no evidence—and there is nothing in the record—to support an inference that Caplan implemented a conservative treatment plan or denied his requests for an MRI and additional treatment for his shoulder pain due to an improper motivation rather than her medical judgment. Nor has Jusino provided evidence to suggest that Caplan had the ability, but failed, to provide him with a physical therapist appointment prior to November 3, 2021. To the contrary, the medical record shows that Caplan was not deliberately indifferent to Jusino's medical needs. Caplan assessed Jusino's shoulder pain, entered orders for diagnostic x-rays and a physical therapy consultation, reviewed his x-ray results, and conducted a follow-up appointment with him a little more than a month after his physical therapy appointment. Indeed, Caplan addressed his medical grievance about her alleged inadequate treatment for his shoulder by explaining that his physical therapy appointment was scheduled, that "hopefully" the physical therapy exercises would "relieve" his discomfort, and that she would follow up with him. Def. Ex. D, Doc. No. 53-7.

In sum, no reasonable jury—upon review of the present record—could determine that Caplan violated Jusino's Eighth Amendment rights by acting with a conscious disregard to his medical needs. Accordingly, Caplan is entitled to entry of summary judgment on the merits of this Eighth Amendment claim.[5] Thus, Caplan's motion for summary judgment, doc. no. 53, is **granted**.[6]

---

[5] Because I grant Caplan's motion for summary judgment on this basis, I need not address her qualified immunity argument.

[6] Having held that Jusino has not proven a constitutional violation, his claims for injunctive relief against Caplan must also be dismissed. Alternatively, Jusino is no longer under Caplan's care because he has transferred facilities. Thus, any claim for injunctive relief is denied as moot.

IV.     CONCLUSION

For the foregoing reasons, Caplan's motion for summary judgment, doc. no. 53, is **GRANTED.** Jusino's motion to dismiss, doc. no. 58, and motion for summary judgment, doc. no. 42, are **DENIED**. The Clerk is directed to enter judgment and close this case.

It is so ordered.

Dated at Bridgeport, Connecticut this 16th day of August 2023.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge